## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AHMAD SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-CV-08186 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF | ) | Judge John J. Tharp, Jr. |
| CORRECTIONS, WEXFORD | ) | |
| HEALTH SOURCES, INC., BALDEU | ) | |
| SINGH, SARAH MAYS, | ) | |
| NWADIUTOR IFEZUE, ARELLA | ) | |
| HOLLOWAY, TINA TOMARAS, | ) | |
| DINAE SCHWARZ, CLAUDE | ) | |
| OKIWOTI, ROBERT SANTOS, | ) | |
| WILLIAM MULCAHY, | ) | |
| LILIOKALANI THOMAS, AND DOES | ) | |
| 1-10 | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons set forth in the statement below, the Wexford defendants' motion to dismiss [68] is granted in part and denied in part. The IDOC defendants' motion to dismiss [83] is denied. This case is referred to the assigned magistrate judge for discovery scheduling, discovery supervision, and should the parties pursue settlement, for a settlement conference.

## STATEMENT

For the purposes of these motions to dismiss, the Court accepts the following facts alleged in the complaint as true.

Ahmad Simmons, who has Type-I diabetes, was incarcerated at the Stateville Northern Reception and Classification Center (NRC) for about one month in 2018. In December 2017, Simmons, a North Carolina resident, pleaded guilty to a drug offense in Cook County. Second Amended Complaint (SAC) ¶ 33. By the time of his sentencing, he had been released from Cook County Jail and was living in a residential center, and his sentence did not include any further incarceration. *Id.* After sentencing, he reported for a "dress in, dress out" procedure at Cook County Jail. *Id.* at 34. Because he is not from Chicago, he listed a local hotel room as his address upon release, but release to a hotel is not permitted under IDOC rules. *Id.* Accordingly, he was transferred to the NRC the following day, arriving on December 14, 2017. *Id.* at ¶ 35. He alleges that during his approximately one month there, the defendants 1) refused to assist him with administering his eye drops, causing him to go completely blind 2) failed to administer the right type of insulin, causing his blood sugar to go out of control and 3) the guards mistreated him when

leading him from his cell to his medical appointments by mocking his blindness and causing him to collide with objects.

Simmons has been diabetic since childhood. SAC at ¶ 20. His condition affects his eyesight; the complications for his eyes include macular edema, glaucoma, and diabetic retinopathy. SAC ¶ 21. By March 2017, Simmons had impaired vision, including a complete loss of vision in his right eye. *Id.* at ¶ 27. He had some remaining vision in his left eye and was able to see "forms, light, and movement[.]" *Id.* His residual vision enabled him to perform a few basic tasks, such as walking with a cane, perceiving faces from a close distance, and distinguishing night from day. *Id.* at ¶ 28. To preserve his remaining vision, physicians had prescribed Simmons several medications to be administered as eye drops. *Id.* at ¶ 30. He had at least four different prescription eye drops, all in different bottles, each of which had a different dosage and schedule for administration. *Id.* at ¶ 31. Because of his visual impairment, Simmons could not distinguish among the bottles of eye drops and required assistance administering them. *Id.* Simmons also requires regular insulin injections to control his blood sugar.

While at NRC, he encountered various nurses and doctors, some of whom are employed directly by IDOC (the IDOC defendants) and some of whom are employed by defendant Wexford, the private company that is contracted to provide medical services to prisoners (the Wexford Defendants). The IDOC defendants include nurses Sarah Mays, Nwadiutor Ifezue, Arella Holloway and Dr. Baldeu Singh. *Id.* at ¶¶ 8-10. The Wexford defendants are nurse practitioner Diane Schwarz, physician's assistant Claude Okiwoti, and nurse Tina Tomaras. *Id.* at ¶¶ 7, 11-13, 38. There are also five Doe defendants alleged to have encountered Simmons as part of the prison medical staff. In addition to these three groups of medical defendants, there is a group of guard defendants who allegedly abused Simmons while they were supposed to be guiding him to his medical appointments: William Mulcahy, Robert Santos, Liliokani Thomas, and Does 6-10.

Simmons had a medical intake with Schwarz on December 15, 2017. *Id.* at ¶ 37. After examining Simmons, Schwarz said she would prescribe eye drops. *Id.* at ¶ 40. When nurse Roe (not a defendant in this action) finally delivered the eye drops, Simmons explained that he would need help administering them; Roe left him some of the medication and took the rest back to the infirmary, informing Simmons that staff would be back with the rest during medication rounds. *Id.* at ¶ 41. Simmons "believed that this plan was feasible" since he knew which medications had been left with him and could administer them according to the correct dosage and schedule, and also believed assistance with the other medications was forthcoming. *Id.* Later that day, however, nurse Tomaras (a Wexford defendant) took Simmons' other medications back to his cell and explained that the medical staff would not be able to assist him with the eye drops because they were too busy. *Id.* at ¶ 42. Simmons responded that he would have no way of distinguishing among the different bottles of eye drops and would thus not know when or how much to take. *Id.* Nonetheless, nurse Tomaras left all the medications with Simmons in his cell. *Id.*

Simmons was thus unable to administer the eyedrops—he just had five bottles with different dosages and different schedules, and, because of his impaired vision, did not know which was which. *Id.* at ¶ 43. Each day thereafter, Simmons told all seven named medical defendants—both in the Wexford and IDOC groups—that this arrangement was untenable. *Id.* at ¶ 45. He made his complaints during twice-daily visits to the infirmary during which he would receive his insulin

2

shots. *Id.* His complaints went unheeded; the medical defendants refused to help him identify and administer his eye drops. *Id.* at ¶ 47. Lacking any assistance, Simmons administered one drop from each bottle each day: the wrong dosage, but the only one he felt safe administering to himself because he feared overdosing. *Id.* at ¶ 46. The remaining sight in his left eye worsened over the next several weeks until he lost it entirely.

Simmons also claims that the medical staff treated him with the wrong type of insulin despite his repeated protests and warnings that the prescribed insulin would be insufficient to control his blood sugar. Wexford defendants Schwarz and Okiwoti told Simmons he would be prescribed "70/30" insulin twice daily—the 70/30 refers to a mix of both long-lasting and fast-acting insulin. *Id.* at ¶ 50. Simmons told Schwarz, Okiwoti, and the other medical defendants that he needed a long-acting insulin such as Lantus; the 70/30 insulin would be insufficient because Simmons also suffered from gastroparesis, a stomach condition that causes slower digestion. *Id.* at ¶ 23, 51. The medical defendants responded to his daily requests by asserting that Lantus was too expensive, and the prison would not provide it. *Id.* at ¶ 51. Because of this, Simmons's blood sugar was out of control, creating additional health risks and contributing to the deterioration of his vision. *Id.*

Simmons's twice-daily trips to the infirmary required accompaniment from prison guards because his impaired vision made getting there on his own difficult. *Id.* at ¶ 53. During those movements to the infirmary, Simmons alleges, guard defendants Santos, Mulcahy, Thomas, and Does 6-10 would "intentionally refuse to aid him, allowing him to bump into things and harm himself." *Id.* The guards would taunt him, shine flashlights in his eyes, and laugh at him when he bumped into things. *Id.* at ¶ 54.

Finally, after about three weeks at NRC, the pre-parole board found a Residential Reentry Center (RRC) that would agree to house him. *Id.* at ¶¶ 56-59. Simmons was seen at the Stroger Hospital clinic shortly after his release, where his doctors informed him that his vision was permanently lost.

Simmons organizes these three claims—regarding his eye drops, his insulin medication, and abuse by the guards—into seven counts. In Count One, he alleges that the IDOC failed to accommodate his disability in violation of the ADA. Count Two is Simmons's legal theory under the Rehabilitation Act. Count Three alleges deliberate indifference in violation of Simmons's Eighth Amendment rights by all of the medical defendants. Count Four alleges medical malpractice against Wexford, Singh, Tomaras, Schwarz, and Okiwoti (the Wexford defendants). Count Five alleges that the medical defendants negligently inflicted emotional distress, and Count Six alleges that the guards intentionally inflicted emotional distress. Count Seven alleges that Wexford is liable for the conduct of the Wexford defendants under a theory of *respondeat superior*.

## I.      The Wexford Defendants' Motion to Dismiss

Before the Court are two motions to dismiss, the first from the Wexford defendants seeking partial dismissal of the complaint; specifically Count Four (medical malpractice) and Count Seven (*respondeat superior*). Over the course of the parties' briefing, the defendants acknowledged that their argument as to Count Four was foreclosed by binding Seventh Circuit precedent, and

3

Simmons acknowledged that his Count VII is also a non-starter under binding precedent. Both parties indicate their intention to argue those precedents are wrongly decided.

As for Count Four, the defendants contended that the plaintiffs did not comply with an Illinois procedural requirement for medical malpractice claims set forth in 735 ILCS 5/2-622 ("2-622"), and therefore this claim must be dismissed. Section 2-622 provides that plaintiffs in medical malpractice cases must attach an affidavit and physician's report certifying that the claim is meritorious. Because the Federal Rules contain no such requirement, and pleading in federal court is governed by Rule 8, this potentially raises an *Erie* problem. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). But, Simmons responds, the Seventh Circuit resolved this specific issue in *Young v. United States*, holding that, to the extent Section 2-622 is a rule of procedure, "it gives way to Rule 8[.]" 942 F.3d 349, 351 (7th Cir. 2019). Lack of compliance with Section 2-622 is not grounds for dismissing a complaint in federal court; it should instead be assessed at summary judgment. *Id.* In reply, the Wexford defendants acknowledge that Simmons' argument is correct. Their motion to dismiss Count Four on this basis is accordingly denied.

Simmons, however, also acknowledges that his *respondeat superior* theory as to Wexford is doomed. "Under existing law," he explains, private corporations may not be held vicariously liable for constitutional violations committed by their employees." Resp. 4, ECF No. 75. But Simmons points to dicta in *Shields v. Illinois Department of Corrections* suggesting that this rule "deserve[s] fresh consideration." 746 F.3d 782, 789 (7th Cir. 2014). Simmons wants to preserve this argument should that dicta someday be adopted as law. Fair enough—the argument is preserved, and Wexford's motion as to Count VII is granted.

## II.    The IDOC Defendants' Motion to Dismiss

### A.  The IDOC Medical Defendants

The IDOC defendants—a group that includes medical defendants Singh, Mays, Ifezue and Holloway, and all the guard defendants—move to dismiss on the grounds that, *inter alia*, Simmons failed to state a claim under 42 U.S.C. § 1983. As to the medical defendants, IDOC argues that Simmons engages in "group pleading" and doesn't plead the specific responsibility of any particular defendant. They also contend that the plaintiff alleges, at worst, medical malpractice, which does not rise to the level of deliberate indifference in violation of Simmons's Eighth Amendment rights. Finally, IDOC contends that Simmons's state law tort theories fail because the claims are against the state, and thus sovereign immunity bars recovery on those theories.

The Eighth Amendment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose'". *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). A plaintiff must allege that the condition is objectively serious (the defendants do not dispute that Simmons's conditions fit the bill) and that the defendants acted with deliberate indifference to those serious medical needs. *Petties*, 836 F.3d at 727-28. "A prisoner's statement that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted—if it

names the persons responsible for the problem." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

The IDOC defendants say that pleading a deliberate indifference claim under § 1983 requires allegations of "the direct, personal responsibility" of the defendants, citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Simmons failed to do so, according to IDOC, in several ways. First, Simmons engages in "group pleading" with his allegations that all the medical defendants ignored his requests for an appropriate type of insulin. IDOC MTD at 5-6, ECF No. 83. The complaint alleges that all the medical defendants were aware of this serious medical need and ignored it. SAC at ¶¶ 49-52. Second, as to Simmons' claim regarding assistance with his eye drops, the defendants argue that the IDOC defendants must be dismissed because the complaint alleges they were responsible for administering insulin, not eye drops.

The Court concludes that the complaint more than adequately raises a plausible inference that the defendants bear the "direct, personal responsibility" that is required to state a § 1983 claim. The cases upon which the defendants improvidently rely to make their argument have to do with prison administrators and others exercising some form of supervisory authority, not nurses and doctors whose responsibilities are to provide medical care to prisoners.

In *Gentry v. Duckworth*, for example, the plaintiff alleged that the prison superintendent denied him access to the courts. 65 F.3d 555 (7th Cir. 1995). "[I]nstead of naming the prison employees who actually refused him materials, Gentry proceeded solely against [the superintendent,]" claiming that he violated Gentry's right of access to the courts by denying him writing materials. 65 F.3d at 558-59. The Seventh Circuit reversed the district court's grant of summary judgment for the superintendent, because the plaintiff had raised a genuine dispute as to whether the superintendent knew about the denial of materials or, at least, took steps to avoid learning about the problem. *Id.* at 561. That the supervisory official in *Gentry* who did not directly commit the claimed constitutional violation could be liable does not bode well for IDOC's arguments regarding the responsibility of doctors and nurses who provide hands-on treatment to inmates. Simmons alleges here that the medical staff knew about his problems but ignored them: beginning after his medical intake and each day thereafter, he claims that he told all the medical defendants that he could not administer his eye drops to himself and that 70/30 insulin would not control his blood sugar. SAC at ¶¶ 45, 51. In short, *Gentry* does not support the contention that plaintiff did not sufficiently allege the direct responsibility of the defendants; as in that case, here it is a reasonable construction of Simmons's pled facts that the nurses and doctors to whom he allegedly complained both knew about Simmons's pleas for adequate treatment and, as medical professionals, were required to do something other than ignore Simmons' entreaties.

The defendants also pluck some language from its context in *Burks v. Raemisch*, a case which, like *Gentry*, undermines their argument. 555 F.3d 592 (7th Cir. 2009). According to IDOC, this case stands for the proposition that "Public officials do not have a free-floating obligation to put things to rights," and therefore the IDOC defendants charged with giving Simmons his insulin had no responsibility to treat his eye condition. IDOC MTD at 8 (*citing Gentry*, 555 F.3d at 595). In *Burks*, that statement was directed at the plaintiff's claim that a defendant responsible for processing prison grievances was deliberately indifferent when the defendant rejected Burks's grievance as untimely. *Id.* at 594-95. Suffice it to say that a prison administrator responsible for

5

processing grievances does not make for a sound analogy to the medical defendants here—all doctors and nurses. Indeed, in *Burks*, the Seventh Circuit distinguished the grievance administrator from those who would be appropriate defendants: "the physicians and nurses who knew about his eye condition." *Id.* at 594-95.

In short, IDOC asks the Court to draw a dubious inference in its favor—namely, that medical staff working in the diabetes clinic were responsible solely for administering insulin and thus were entitled to bury their heads in the sand as to any other medical issues the inmates they were treating might face—including, as with plaintiff's eye conditions, ***medical problems that may be caused or exacerbated by diabetes***. This argument borders on the frivolous. If the allegations of the complaint are true, the reasonable inference to be drawn is that medical personnel staffing the diabetes clinic refused even to read the medication labels to Simmons, a task that is seemingly within the competence of even highly specialized personnel. And to the extent this case presents a fact issue regarding the duties and responsibilities of particular medical professionals employed by IDOC, that is question for discovery, not pleading.[1]

The complaint alleges that Simmons repeatedly, even daily, complained to all of the IDOC medical defendants—identified by name—that he could not administer his eye drops without another person lending their eyesight, and that 70/30 insulin instead of Lantus would cause his blood sugar to become uncontrollable. SAC ¶¶ 41-43, 45, 47. Simmons has done in his complaint exactly what is required to state a § 1983 claim for deliberate indifference. *See Burks*, 555 F.3d at 594. He has stated a plausible claim of reckless indifference to his medical needs—one in which the high risk of failing to act and low burden of acting make the inference of indifference easy to draw.

Nevertheless, the defendants' next argument is that Simmons alleges medical malpractice, not deliberate indifference. It is true that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Somehow, IDOC reads the complaint to allege that the doctors and nurses were exercising medical judgment, and that their judgment might have been erroneous. But that is not what Simmons has alleged. His complaint states that the medical defendants' alleged refusal to assist him with administering his eye drops and to provide a different type of insulin was premised on expediency and cost concerns, not medical judgment. SAC ¶¶ 42, 51. A plaintiff claiming deliberate indifference must allege that officials "*actually* knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. The "first and most obvious" way that plaintiffs show actual knowledge, and what Simmons has alleged here, is "a prison official's decision to ignore a request for medical assistance." Simmons's allegations state a claim for deliberate indifference to his serious medical needs.

---

[1] The plaintiffs filed a supplement containing a deposition from another lawsuit that goes to this point of the IDOC staff's responsibilities for administering various treatment. ECF No. 102. The Court does not need that deposition or the argument filed alongside to resolve this motion to dismiss.

### B. The IDOC Guard Defendants

The IDOC guard defendants make two arguments with respect to Simmons' claims. They first argue that Simmons alleged that the guards only verbally abused him, and that is insufficient to state a § 1983 claim. Second, reprising an argument brought on behalf of the medical defendants, IDOC argues that Simmons hasn't specifically alleged the involvement of any particular guard, but instead has engaged in group pleading against guard defendants Mulcahy, Thomas, and Santos.

The guards' first argument proceeds from an uncontroversial legal premise: "standing alone, simple verbal harassment does not violate a prisoner's constitutional rights[.]" IDOC MTD at 9. *But see Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (acknowledging this general rule but holding that alleging sufficiently severe verbal harassment can suffice to state a claim). The problem for IDOC is that Simmons' allegations of verbal abuse do not stand alone. The complaint alleges that the guards mocked Simmons's blindness as they escorted him to the clinic for his diabetes treatment, SAC ¶ 18, but also that they "would intentionally refuse to aid" Simmons when he required their assistance in guiding him, allowing him "to bump into things and harm himself." *Id.* at ¶ 53. The complaint, then, alleges physical abuse and verbal abuse, a fact the defendants ignore. For this reason, the cases they cite are readily distinguishable; in *Patton v. Przbylsky*, 822 F.2d 697 (7th Cir. 1987), the Seventh Circuit concluded that state police did not violate an arrestee's civil rights by making racist remarks. *Id.* at 700. There was no allegation there, as there is here, of physical abuse. The same is true of *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); the plaintiff did not claim any physical abuse, only the use of racial epithets and other verbal abuse.

The defendant's "group pleading" argument fares no better. Citing a decades-old district court opinion denying a motion for directed verdict, the IDOC argues that the plaintiff must bring "proof… that the individual defendant actually caused the Plaintiff's injury through his own conduct." IDOC MTD at 4 (citing *Volk v. Coler*, 638 F. Supp. 1540, 1547 (N.D. Ill. 1986). The procedural posture of that case encapsulates the weakness of IDOC's argument. That opinion in *Volk* came after a full trial; this case is at the pleading stage and is governed by Rule 8, which requires "a short plain statement of the claim" that gives the defendant "fair notice of what the… claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). Simmons has adequately plead the involvement of the guard defendants in his alleged abuse and says the three guard defendants taunted him and caused him to collide with objects. SAC ¶¶ 53-54. The complaint presents a coherent factual narrative that puts the three named guard defendants on sufficient notice and allows them to prepare a defense.

### C. Simmons's State Law Claims are not Barred by Sovereign Immunity

Finally, IDOC argues that the state law claims for negligent infliction of emotional distress (against the medical defendants) and intentional infliction of emotional distress (against the medical and guard defendants) must be dismissed because the state is immune from suit with respect to tort claims against a state official acting in the scope of his employment. IDOC MTD at 10 (citing *Richman v. Sheahan*, 270 F.3d 430, 441-42 (7th Cir. 2001). Simmons sued the medical and guard defendants in their individual capacities, but IDOC says this lawsuit is actually against the state because the breach complained of arose out of the defendants' duties as employees of the state.

7

A defendant's conduct, IDOC explains, will be attributed to the state if: "(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) … the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Richman*, 270 F.3d at 441. Consistent with its dubious handling of precedent so far, IDOC neglected to include the sentence from *Richman* that follows immediately after the above-quoted portion: "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Id.*

Here, Simmons's state law theories are based on the same factual allegations that form the basis of his constitutional claims, and which the Court above found adequate to state an Eighth Amendment claim; accordingly, there is no immunity. That is not the only problem with IDOC's immunity argument; another is that this type of immunity is an affirmative defense. *Rodriguez v. Cook County*, 664 F.3d 627, 631-32 (7th Cir. 2011) (holding that this same immunity argument is an affirmative defense, and not a basis for federal courts to dismiss for lack of subject matter jurisdiction). Dismissal based on an affirmative defense "is an unusual step, since a complaint need not anticipate and overcome affirmative defenses." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). IDOC's arguments illustrate why that must be true here: it contends, in essence, that the defendants did not owe Simmons any duty with respect to his specific complaint about eye drops because the IDOC defendants were responsible only for administering insulin. Of course, discovery will be necessary to support that defense; for now, Simmons has adequately plead the sort of breach that is not covered by sovereign immunity.

A final problem with this argument is that Rule 12(b)(6) authorizes the dismissal of claims, not legal theories. *See Mannes v. Ford Motor Co., Inc.*, 2014 WL 7332616 *2 (N.D. Ill. 2014) (citing *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012)). Multiple legal theories can support one claim—just as Simmons' claim that he went blind because prison staff refused to assist him with his eye drops forms the basis of a Section 1983 theory and state law tort theories. That is reason enough to deny the IDOC defendants' motion to dismiss. As long as some theory plausibly supports a claim for relief, there is no need, or license, under Rule 12(b), to pass on the viability of alternative legal theories identified in a complaint in support of that claim. Legal theories can be developed in discovery; at this point in the proceedings "the question… is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).

\*        \*        \*

The Wexford defendants' motion to dismiss is granted in part and denied in part. The claim against Wexford is unsupported by any legal theory given that it is not vicariously liable for the conduct of its employees and so Wexford's motion to dismiss the claim in Count VII is granted. The motions of the Wexford defendants and the IDOC defendants are otherwise denied

Date: July 6, 2022

John J. Tharp, Jr.
United States District Judge

9